UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| LONDA T.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:17-cv-00315-JRS-MJD |
| | ) |
| NANCY A. BERRYHILL, Acting Commissioner, Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Londa T. ("Ms. T.") applied for disability insurance benefits ("DIB") from the Social Security Administration ("SSA") on October 10, 2014, alleging an onset date of June 27, 2014. [ECF No. 10-2 at 63.] Her application was initially denied on November 25, 2014, [ECF No. 10-5 at 2], and upon reconsideration on February 17, 2015 [ECF No. 10-2 at 63]. Administrative Law Judge Kevin R. Martin (the "ALJ") held a hearing on September 27, 2016. [ECF No. 10-3 at 4-33.] The ALJ issued a decision on December 14, 2016, concluding that Ms. T. was not entitled to receive DIB. [ECF No. 10-2 at 60.] The Appeals Council denied review on May 5, 2017. [ECF No. 10-2 at 2.] On July 5, 2017, Ms. T. timely filed this civil action asking

---

[1] In an attempt to protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). [ECF No. 1.]

# I.
# STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for

further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Ms. T. was 57 years of age at the time she applied for DIB. [ECF No. 10-6 at 2.] She has completed at least four years of college and previously worked as a nurse supervisor. [ECF No. 10-7 at 17-18.][2]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Ms. T. was not disabled. [ECF No. 10-2 at 75.] Specifically, the ALJ found as follows:

- At Step One, Ms. T. had not engaged in substantial gainful activity[3] since June 27, 2014, the alleged onset date. [ECF No. 10-2 at 65.]

- At Step Two, she had the following severe impairments: "migraine headaches, major depressive disorder with panic attacks, generalized anxiety disorder, and post-traumatic stress disorder (PTSD) traits." [ECF No. 10-2 at 65 (internal citation omitted).]

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [ECF No. 10-2 at 66.]

- After Step Three but before Step Four, she had the RFC "to perform a full range of work at all exertional levels but with the following non-exertional limitations: she needs to avoid concentrated exposure to loud noise, vibration, and

---

[2] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[3] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

4

fumes. She is able to understand, remember, and carry out instructions for simple tasks on a sustained basis in a work setting requiring no more than occasional interaction with co-workers, supervisors, and the public." [ECF No. 10-2 at 68.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Ms. T.'s RFC, she was incapable of performing her past relevant work as a nurse supervisor. [ECF No. 10-2 at 74.]

- At Step Five, relying on VE testimony and considering Ms. T.'s age, education, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed through the date of the decision. [ECF No. 10-2 at 74-75.]

### III.
### DISCUSSION

Ms. T. raises four arguments in support of her appeal that the ALJ (1) failed to account for the moderate difficulties with concentration, persistence, or pace that he found supported by the record, (2) improperly dismissed the disabling opinions of her treating mental health providers, (3) made a patently wrong credibility determination, and (4) committed reversible error by failing to find whether there were a significant number of jobs she could perform at Step Five. The Court will discuss the issues raised as necessary to resolve the appeal

**A. Moderate Difficulties with Concentration, Persistence, or Pace**

Ms. T. argues that the ALJ failed to account for his own findings—that she had moderate difficulties with concentration, persistence, or pace—when articulating her RFC and conveying her limitations to the VE. [ECF No. 14 at 16-21.]

Regardless of the basis, a hypothetical question put by the ALJ to the VE "must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron v. Shalala,* 19 F.3d 329, 337 (7th Cir.

1994); *Indoranto v. Barnhart,* 374 F.3d 470, 473-74 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record."); Social Security Ruling ("SSR") 96–5p (S.S.A. July 2, 1996), 1996 WL 374183, at *5 (RFC assessment "is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence"); 20 C.F.R. § 404.1545. "Among the mental limitations that the VE must consider are deficiencies of concentration, persistence, or pace." *Varga v. Colvin,* 794 F.3d 809, 813 (7th Cir. 2015) (citing *Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014); *Stewart v. Astrue,* 561 F.3d 679, 684 (7th Cir. 2009)). "Although it is not necessary that the ALJ use the precise terminology of 'concentration,' 'persistence,' or 'pace,' we will not assume that a VE is apprised of such limitations unless he or she has independently reviewed the medical record."[4] *Varga,* 794 F.3d at 814 (citing *Yurt,* 758 F.3d at 857).

The Seventh Circuit has repeatedly expressed its concerns with translating moderate difficulties with concentration, persistence, and pace into limitations as to the skill level demands of a job. "In most cases, however, employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 620 (7th Cir. 2010) (citing

---

[4] There is no indication in this case that the VE was otherwise apprised of the full limitations supported by the record beyond the described limitations that were specifically conveyed to the VE in hypothetical questioning from the ALJ. The ALJ's Step Five findings depended on the VE's testimony given in response to one hypothetical that matched the ALJ's RFC finding. [ECF No. 10-3 at 30-31.]

6

*Stewart,* 561 F.3d at 684-85 (limiting hypothetical to simple, routine tasks did not account for limitations of concentration, persistence, and pace)); *see also Craft v. Astrue,* 539 F.3d 668, 677-78 (7th Cir. 2008) (restricting hypothetical to unskilled work did not consider difficulties with memory, concentration or mood swings). "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner,* 627 F.3d at 620 (citing *Stewart,* 561 F.3d at 684-85; *Craft,* 539 F.3d at 677; *see also* SSR 85-15 (S.S.A. 1985) 1985 WL 56857 at *6 ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job.")). "[W]e have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt,* 758 F.3d at 858-59.

The ALJ found that the evidence demonstrated that Ms. T. had moderate difficulties with concentration, persistence, or pace when assessing the paragraph B criteria.[5] [ECF No. 10-2 at 67.] However, from a mental standpoint, the ALJ's RFC finding only limited Ms. T. to performing work involving instructions for simple tasks

---

[5] The difficulties identified in the "paragraph B" criteria are used to rate the severity of mental impairments at Steps Two and Three of the sequential evaluation process. 20 C.F.R. § 404.1520a(d)-(e). However, the RFC assessment used at Steps Four and Five requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorder listings. SSR 96-8p (S.S.A. July 2, 1996), 1996 WL 374184 at *4. For purposes of this argument only, Ms. T. does not challenge the paragraph B findings, but rather assuming those findings, she challenges the sufficiency of the more detailed assessment.

7

with limited interaction with others. [ECF No. 10-2 at 68 ("She is able to understand, remember, and carry out instructions for simple tasks on a sustained basis in a work setting requiring no more than occasional interaction with co-workers, supervisors, and the public.").] The Court finds that the RFC finding does not adequately capture temperamental deficiencies with concentration, persistence, or pace. *See Yurt,* 758 F.3d at 858-59.

The Commissioner argues that the ALJ's RFC limitation "reasonably accommodated" Ms. T.'s mental impairments, because "examining psychologist Dr. Fink and the state agency psychologists assessed similar limits." [ECF No. 22 at 5.] However, the Court finds the argument unavailing.

The ALJ gave "moderate weight" to the opinion of Albert Fink, Ph.D., a psychologist that performed a consultative examination of Ms. T. at the request of the SSA. [ECF No. 10-2 at 71.] Dr. Fink's behavioral observations of Ms. T. included that she "was quite emotional during the interview, breaking into tears at one point." [ECF No. 10-9 at 3.] Dr. Fink's diagnostic impression was "Major Depressive Disorder, Mild/Moderate, with significant anxiety PTSD Traits." [ECF No. 10-9 at 4.] Dr. Fink provided a medical source statement assessing Ms. T.'s mental limitations:

> With respect to work-related activities, the claimant's cognitive abilities are adequate for a variety of unskilled or semi-skilled vocational tasks, such as those found in assembly, manufacturing, service, or maintenance organizations. She appears capable of understanding moderately complex instructions and procedures. However[,] her affective symptoms appear as an obstacle to task implementation, in terms of her ability to make independent decisions, follow through, and her ability to consistently interact effectively with co-workers, supervisors, or the general public.

[ECF No. 10-9 at 5.] Consistent with the concerns of the Seventh Circuit discussed above, Dr. Fink's assessment made a distinction between the complexity of tasks and instructions that Ms. T. would be capable of understanding, and her ability to follow through with implementing those tasks. The ALJ did not recognize that distinction in his decision when assessing Ms. T.'s RFC or discussing Dr. Fink's opinion. The RFC did not accommodate limitations with Ms. T.'s ability to consistently follow through with the type of tasks she would cognitively be capable of understanding. The ALJ did not explain in the alternative how he discounted the portions of Dr. Fink's opinion that were not included in his RFC finding.

The ALJ equally gave "moderate weight" to the opinions of the state agency psychological consultants, Randal Horton, Psy.D., and F. Kladder, Ph.D. [ECF No. 10-2 at 73.] Both reviewing consultants made identical paragraph B findings, which included moderate difficulties in maintaining concentration, persistence, or pace. [ECF No. 10-4 at 5-6; ECF No. 10-4 at 17-18 (Both consultants' assessments gave great weight to Dr. Fink's opinion).] Both reviewing consultants also made identical findings in support of their paragraph B assessments, which detailed more specific work-related functional abilities, including that Ms. T. was not significantly limited in most areas, but was moderately limited in her ability to: (1) maintain attention and concentration for extended periods, (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and (3) interact appropriately with the general public.

[ECF No. 10-4 at 8; ECF No. 10-4 at 20 (The more specific functional assessments are itemized by the consultants' completion of Section I of the Mental Residual Functional Capacity Assessment ("MRFCA") worksheet).] The consultants also provided identical narrative assessments noting that Ms. T. "has problems concentrating and listening," "is credible," and would be "able to do semiskilled tasks within physical parameters." [ECF No. 10-4 at 9; ECF No. 10-4 at 21.]

In support of her argument, the Commissioner cites to an unpublished decision of the Seventh Circuit in *Capman v. Colvin*, 617 F. App'x 575, 579 (7th Cir. 2015), which held that "the ALJ may reasonably rely on the examiner's narrative in Section III, at least where it is not inconsistent with the findings in the Section I worksheet." A later precedential decision of the Seventh Circuit clarified:

> This circuit declined to adopt a blanket rule that checked boxes in Section I of the MRFCA form indicating moderate difficulties in mental functioning need not be incorporated into a hypothetical to the VE. In fact, in *Yurt,* we explicitly rejected the argument that "we should be unconcerned . . . with the failure of the ALJ to mention the . . . areas where [the state psychologist] found moderate limitations because the narrative portion of the form adequately translated these limitations into a mental RFC that the ALJ could reasonably adopt."

*Varga,* 794 F.3d at 816 (citing *Yurt,* 758 F.3d at 858). Limiting Ms. T. to semi-skilled tasks would be inconsistent with the specific difficulties assessed in the Section I worksheet noted above, which do not at all deal with the complexity of tasks. *See Wilson v. Berryhill*, 2018 WL 300184 at *2 (S.D. Ind. Jan. 5, 2018) (by

10

contrast, distinguishing *Yurt* and *Varga* based on a narrative limiting the claimant to unskilled work that was consistent with only one underlying function being moderately limited that involved working with detailed tasks).

There is no indication that the ALJ actually attempted to rely on the narrative(s) of the consultants. The ALJ's RFC finding in relevant part was notably different. However, to the extent that the Commissioner insinuates that the ALJ's RFC finding was justified because it further reduced Ms. T. to dealing with simple tasks and the consultants found "a capacity that was greater than the ALJ found," [ECF No. 22 at 7], the Court finds that the same analytical defect explained above still applies. Further reducing the complexity of the tasks does not directly address demands on concentration, persistence, or pace. For example, in *Collins v. Berryhill*, 2018 WL 1281391, at *5 (S.D. Ind. Mar. 12, 2018), the VE testimony in that case provided a qualified expert opinion that there was actually an inverse relationship between the skill level demands of a particular production-type job and the pace demands of that job, whereby the reduced skill level meant that the competitive employer expected a greater pace of work.

The result in *Capman* also depended on an exception to the general rule established by precedent. "[T]he ALJ's RFC findings accurately reflected [the reviewing psychologist's] assessment by restricting Capman to simple, routine tasks and limited interactions with others. Both the medical evidence and Capman's testimony support the finding that any limitations in concentration, persistence, and pace stem from Capman's anxiety attacks, which occur when he is

11

around other people. Therefore, the limitations incorporated into the ALJ's RFC findings adequately addressed Capman's deficiencies in concentration, persistence, and pace." *Capman,* 617 F. App'x at 579 (citing *O'Connor–Spinner,* 627 F.3d at 619 ("We also have let stand an ALJ's hypothetical omitting the terms 'concentration, persistence and pace[,]' when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform."); *see also Johansen v. Barnhart,* 314 F.3d 283, 288-89 (7th Cir. 2002) (concluding that substantial evidence supported the denial of disability benefits where the ALJ's mental RFC assessment and hypothetical to the VE failed to explicitly note the three areas referenced by one consultative physician that the claimant was "moderately limited")). The Seventh Circuit explained in *Yurt*: "[W]e allowed the hypothetical in *Johansen* to stand despite its omissions because its description of 'repetitive, low-stress work' specifically excluded positions likely to trigger the panic disorder that formed the basis of the claimant's limitations in concentration, persistence, and pace." 758 F.3d at 858 (citing *O'Connor–Spinner,* 627 F.3d at 619 (collecting and distinguishing cases, including *Johansen,* upholding hypotheticals that omitted restrictions in "concentration, persistence, and pace")).

Here, Dr. Fink noted that Ms. T.'s affective symptoms related to her depression diagnosis compromised her ability to implement tasks, as noted above. Furthermore, the ALJ explained his paragraph B criteria finding by referencing testimony that Ms. T. had indicated "her medications cause her to lose focus, and

12

it sometimes takes an entire day to prepare a simple meal." [ECF No. 10-2 at 67; *see* ECF No. 10-3 at 16 (Ms. T. testified to confusion as side effect of her medication causing "brain fog.").] While panic attacks are a component of Ms. T.'s difficulties, limiting interaction would not account for issues related to her affective symptoms and the side effects of her medication.

The Court finds that the additional cases cited frequently by the Commissioner are not persuasive. *See* [ECF No. 22 at 6-7.] In *Todd A. v. Berryhill*, 2018 WL 4017757, at *5 (S.D. Ind. July 26, 2018), *report and recommendation adopted sub nom. Allen v. Berryhill*, 2018 WL 4007651 (S.D. Ind. Aug. 21, 2018), the district court explained:

> In support of her argument, the Deputy Commissioner cites to two unpublished cases in which the Seventh Circuit affirmed ALJ decisions that included fewer limitations than the ALJ in this case: *Seamon v. Astrue*, 364 F. App'x 243 (7th Cir. 2010), and *Parrott v. Astrue*, 493 F. App'x 801 (7th Cir. 2012). Neither of these unpublished cases is persuasive. *See* 7th Cir. R. 32.1(b); *U.S. v. Townsend*, 762 F.3d 641, 646 (7th Cir. 2014) (unpublished cases are not binding). The court in *Seamon* held that a limitation of no high production goals accounted for moderate limitations in concentration, persistence, or pace, but that opinion came before *O'Connor-Spinner*. Thus, it is not persuasive. Further, when the [Deputy] Commissioner in *Parrot* argued that the claimant's moderate limitation in concentration, persistence, or pace was accounted for when the ALJ asked the VE to assume the claimant could not do complex tasks, that court merely said, "We agree." *Parrot*, 493 F. App'x at 805. The case lacks any analysis on this issue that could be deemed persuasive.

The Court adopts the analysis above. Furthermore, in this case, the RFC did not even contain a limitation of no high production goals.

13

Accordingly, the Court finds that remand is necessary for further consideration of Ms. T.'s RFC, accounting for any limitations stemming from her moderate difficulties with concentration, persistence, or pace.

**B. Other Arguments**

Having found that the above issue requires remand, the Court declines to fully reach Ms. T.'s other arguments. Ms. T.'s Step Five argument is rendered moot by the need for additional consideration given to her RFC. However, the Court will provide further guidance on remand implicated by Ms. T.'s arguments.

Ms. T. argues that the ALJ did not provide "logical and accurate reasons for dismissing multiple disabling opinions of [her] treating mental health counselors . . . ." [ECF No. 14 at 22.] Ms. T. appears to overlook that the ALJ analyzed examination findings that he characterized as "mostly within normal limits," while properly confronting the presence of some abnormalities. [ECF No. 10-2 at 72.] However, the ALJ does not provide any citation to the record demonstrating his analysis. Perhaps realizing that the explanation was conclusory, the Commissioner argues that "[e]ven if the ALJ erred by not discussing the issue in greater detail, such an error was harmless." [ECF No. 22 at 13.] The ALJ's failure to cite to the record frustrates meaningful review. The Court declines to reweigh the evidence to reach a conclusion. However, given that the treating providers have considerable familiarity with Ms. T., on remand, the ALJ should provide a sufficient explanation for any conclusions reached as to the weight of their opinions with citation to the evidentiary record.

14

Similarly, the Court declines to disturb the ALJ's credibility determination under the deferential standard of review. Ms. T. argues that the assessment was "patently wrong." [ECF No. 14 at 24.] She argues that the "Seventh Circuit has long held that an ALJ may not draw inferences about a claimant's condition from frequency or intensity of treatment unless the ALJ has explored the claimant's explanations as to the lack of medical care." [ECF No. 14 at 25 (citing *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014)*)*.] However, the ALJ did inquire into her level of treatment. *See* [ECF No. 10-3 at 17-21.]

Nevertheless, the Court finds aspects of the ALJ's credibility assessment further frustrate meaningful review. The ALJ summarized Ms. T.'s daily activities at length without any analysis as to how they informed his credibility assessment, *see* [ECF No. 10-2 at 69-70], other than concluding they were a factor, [ECF No. 10-2 at 74]. The ALJ also inquired about the need to adjust medications without addressing how that evidence informed his credibility assessment. [ECF No. 10-2 at 18.] Again, the Court does not conclude the ALJ's assessment was patently wrong. However, given that the claim is being remanded, Ms. T. should be given an additional opportunity to address any explanation for the level of care she received during the relevant period. The ALJ should consider any new evidence along with the complete record and provide a sufficient explanation of the credibility assessment to allow meaningful review.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying Ms. T.'s benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C.§ 405(g) (sentence 4) as detailed above.  Final Judgment will issue accordingly.

Date: 3/6/2019

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana


Distribution:

Jill Z. Julian
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
jill.julian@usdoj.gov

Matthew Frederick Richter
KELLER & KELLER LLP
mrichter@2keller.com

Catherine Seagle
SOCIAL SECURITY ADMINISTRATION
catherine.seagle@ssa.gov

Joseph R. Wambach
KELLER & KELLER
joew@2keller.com